## THE SELECTMEN OF GLOVER *v.* GEORGE W. McGAFFEY AND OTHERS.

### [IN CHANCERY.]

### *Mill Dams.*

The act of 1869, "regulating mill and other dams," did not authorize the committee appointed by the County Court to make an order, in the first instance, directing the owner to lower his dam; or, one that would have that effect,—as to raise his head-gate.

HEARD on bill, answer, replication and testimony, February Term, 1881, Ross, Chancellor. Decree *pro forma* for the orators. The bill was brought by the selectmen of Glover and based on the following order : *

---

\* ACT OF 1869. *Sec.* 2. If in the judgment of the committee so appointed such dam is insufficient and unsafe, they shall determine and direct what alterations, repairs or additions are required to make it sufficient and safe; and shall give a written direc-

" STATE OF VERMONT, }    Whereas the assistant judges of Or-
ORLEANS COUNTY, ss. } leans county court in the state of Ver-
mont did on the 27th day of May, 1876, appoint us, the under-
signed, commissioners to examine as to the safety and sufficiency
of a certain dam and reservoir situated in Glover, in said county,
and commonly called ' Stone Pond.'    Said dam was owned by
G. W. McGaffey, of said town of Glover.    Now, agreeably to
said commission, we the undersigned having made an examina-
tion of said dam, and heard the parties interested in and about
the same, we are unanimous in the opinion that said dam is insuffi-
cient, unsafe, and dangerous, in the present condition to the
property-owners on the stream below, and particularly so to the
inhabitants of Glover Village.    We therefore make the following
order for the time being: That the said G. W. McGaffey shall
immediately commence to reduce the water in said pond by rais-
ing his head-gate at his flume, not exceeding eight inches, so as
to gradually reduce said pond of water down to the bottom of his
said flume by the first day of September next, and then to let said
gate be up so that the water naturally coming into said pond may
flow out through said flume till further order.    The above order
is made by the consent of all parties interested.

Glover, June 24th, 1876."    (Signed and recorded in the town
clerk's office.)

The orators prayed that the defendants be compelled to comply
with the foregoing order.

*W. W. Grout*, for the orators.

*Poland* and *F. W. Baldwin*, for the defendants.

The opinion of the court was delivered by

TAFT, J.    The statute of 1869 gave the committee appointed
by the county judges power to determine and direct what " altera-

---

tion to the owner thereof to make such alterations or repairs within such reasonable
time as said committee shall name in said writing; and they shall make a record of
their doings, together with such direction as they shall give, in the town clerk's office
in the town where such dam is located; which record shall be admissible though not
conclusive evidence in the trial of any issue involving his liability on account of such
dam.

tions, repairs, or additions," were required to make the dam sufficient and safe. The committee ordered the defendant to raise his head-gate and cease using it. This practically lowered his dam and prevented his securing the amount of water the pond had theretofore held. The effect was the same as the removal of the upper part of the dam. Was this such an order as section 2 of the act of 1869 contemplates? such an one as the committee had the right to make? We think not. Raising the gate and keeping it up was not an alteration, repair of, or addition to, the dam, such as we think the legislature had in mind in passing the statute, or that is fairly within the meaning of the words of it. The fair import of the words is, a change in some way of the material structure of the dam, something that will make the dam stronger and not prevent the owner from using it, to secure the usual quantity of water in his pond. The order made was equivalent to one directing the removal of the dam, or a portion of it. That such an order was not contemplated in the first instance we think is evident from the words of the statute ; and we are confirmed in this opinion by the fact that section 3 of the act provides that after an order is made under section 2, and the owner of the dam refuses or neglects to make the " alterations, repairs, or additions " ordered by the committee, the committee are then given the power to remove the dam, or such parts thereof as they may deem necessary to protect the property on the stream below, clearly implying that this was not within the power of the committee in the first instance. This view of the order renders it unnecessary to pass upon the constitutional and other questions in the case, as the act of 1869 is not now in force; for, if not repealed by the act of 1876, it has been since, by the passage of the Revised Laws, among which the provisions of the former act are not included.

The *pro forma* decree of the court of chancery is reversed and cause remanded, with a mandate that the bill be dismissed.